UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11014 DPW

TOUCHPOINT SOLUTIONS, INC.,
Plaintiff,

MAGISTRATE JUDGE Bowler

v.                                                     CIVIL ACTION NO. _____

EASTMAN KODAK COMPANY,
Defendant.

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED yes
LOCAL RULE 4.1 ✓
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. ___
DATE 5/20/04

**COMPLAINT AND DEMAND
FOR TRIAL BY JURY**

Introduction

1. This is an action for damages and injunctive relief arising out of Defendant's breaches of a Confidential Disclosure Agreement, theft of trade secrets and common law misrepresentation. Defendant induced Plaintiff to enter into a joint venture, including the disclosure of confidential information and modification of software for the network management and operation of digital photo kiosks to be sold by Defendant. Defendant also induced Plaintiff not to market its software application as a competitor during the lengthy negotiation of the related agreements and disclosure and modification of Plaintiff's software. Defendant has now violated the terms of its agreement and disclosed Plaintiff's software and trade secrets to TouchPoint's competitors which Defendant has planned to use in its scheme to replace Plaintiff. Defendant also disclosed and shared Plaintiff's trade secrets throughout its own in-house development group and this confidential information is being used unlawfully in developing Kodak's own products. Defendant executed on this plan of deceit and theft of trade secrets through a series of misrepresentations to Plaintiff to induce it to disclose the confidential information and forebear from its own competitive efforts.

Parties

2. TouchPoint Solutions, Inc. ("TouchPoint") is a Delaware corporation with a principal place of business in Coral Springs, Florida and business offices in Canton, Massachusetts.

3. Eastman Kodak Company ("Kodak") is a New Jersey corporation with a principal place of business in Rochester, New York. Kodak does business in the Commonwealth of Massachusetts.

Jurisdiction

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Venue is appropriate in this district under 28 U.S.C. § 1391.

Factual Allegations

5. TouchPoint has developed proprietary enterprise management software. This Catapult™ software platform enables users to manage digital content, functions and service applications remotely, for a number of different distributed devices. In addition, TouchPoint has developed a custom software solution, known as QuickPix, operating with Catapult, which provides for the remote operation and management of photo processing services for digital cameras.

6. Kodak owns, operates and sells digital photo kiosks.

7. Beginning in 2003, Kodak selected TouchPoint as its vendor for remote management software for its digital photo kiosks and entered into discussions for a joint venture by which TouchPoint would provide its proprietary enterprise management software for use in

Kodak's digital photo kiosks. As part of those initial discussions, on April 9, 2003, the parties entered into a Confidential Disclosure Agreement ("CDA"). That CDA provided, in pertinent part, that: "[a] party receiving confidential information ("Recipient") shall not disclose such information for a period of three years ... from the Effective Date except to its or their employees or contractors who have a need to know and who are bound to keep such information confidential."

8. The parties also entered into a Non-Circumvention Agreement, dated July 7, 2003, by which TouchPoint agreed to introduce Kodak to certain TouchPoint customers (in particular Staples) to obtain that business for Kodak printers.

9. During this period, TouchPoint also agreed to assist Kodak in marketing to entities, such as Best Buy, Wal-Mart, Staples and other customers, and to forebear its own marketing efforts all based on the statement and commitment that TouchPoint would be Kodak's exclusive software provider and its software would be included in the Kodak kiosks marketed to these companies. TouchPoint also held off in its approach to other customers based on the strategic partnership agreement and representations by Kodak.

10. Based on these representations, TouchPoint performed a pilot, implemented and refined its software for this application and continued to work with Kodak's technical and commercial groups for the integration of TouchPoint's software with Kodak's kiosk. As part of this work, pursuant to the CDA, TouchPoint disclosed its confidential information to Kodak.

11. The parties also conducted the pilot at TouchPoint's expense which demonstrated a significant increase in kiosk output and related revenue enhancement with the use of TouchPoint's software.

12. The parties then negotiated and agreed to the business terms, including pricing, for the business relationship on December 22, 2003.

13. The parties signed the master Professional Service Agreement on March 21, 2004.

14. In addition, the parties then completed the final version of the full complement of documents, including an agreement on all of the terms of the Master Software License Contract for this exclusive relationship which was ready for execution on March 25, 2004. This agreement included a $15 million termination fee payable to TouchPoint.

15. Throughout this period and through March 2004, Kodak represented and promised to TouchPoint that they had an exclusive relationship, with TouchPoint as the software provider for Kodak's digital photo kiosks.

16. From January through April 2004, Kodak and TouchPoint continued to discuss the technical integration and implementation of the software. These discussions included the continued disclosure of significant amounts of technical and business related confidential information by TouchPoint to Kodak. These discussions culminated in lengthy, daily calls through April 7, 2004 in which, at Kodak's request, TouchPoint continued to disclose and provide its confidential information which included methodology, integration, software framework, scripts and object code to Kodak.

17. In April 2004, TouchPoint learned that Kodak had provided substantial amounts of TouchPoint's highly confidential information to direct competitors, including technical, pricing and business related confidential information. Kodak's in-house development and commercialization teams had been working with both TouchPoint and its competitors, and sharing TouchPoint's highly confidential information and trade secrets during this process. Kodak also has been using TouchPoint's confidential and proprietary information in Kodak's

own internal product development. At this same time, Kodak abruptly refused to execute the completed documents which memorialized the agreed upon business terms.

18.  Kodak then concocted a number of reasons for not continuing with TouchPoint. In particular, Kodak misrepresented the price of TouchPoint's product to customers to justify its decision not to proceed with TouchPoint.

19.  On information and belief, Kodak has commenced an internal investigation into the disclosure of this confidential information and theft of trade secrets. Concurrently, Kodak has dismissed the senior business executive of this division.

20.  During this process, Kodak misrepresented its exclusive commitment, misrepresented its promises of confidentiality, misrepresented the reasons for its investigation and study of TouchPoint's product and misrepresented its reasons for having TouchPoint enter into the joint venture, as opposed to continuing as a competitor. Kodak also continued to misrepresent to TouchPoint its commitment to the joint venture while disclosing TouchPoint's confidential information and planning to use this information and technology outside of the joint venture with the same customers TouchPoint referred to Kodak. Kodak's actions constituted a classic bait and switch through which it obtained TouchPoint's customers, technology and business plans, all the while representing that they had an exclusive business relationship and joint venture. Kodak's lies are evident from its disclosure of the technology, use of the technology in Kodak's own products, theft of TouchPoint's customers, misrepresentation of the reasons for the abrupt cancellation and blatant misuse of TouchPoint's trade secrets.

## COUNT I
(Breach of Contract)

21.  TouchPoint incorporates by reference paragraphs one through twenty.

22. Kodak has materially breached its contract with TouchPoint by disclosing confidential information in violation of the provisions of the Confidential Disclosure Agreement.

23. Kodak's conduct has caused and continues to cause TouchPoint substantial damages and irreparable harm.

## COUNT II
(Misappropriation of Trade Secrets)

24. TouchPoint incorporates by reference paragraphs one through twenty-three.

25. Kodak has misappropriated TouchPoint's confidential information and trade secrets.

26. Kodak's conduct has caused and continues to cause TouchPoint substantial damages and irreparable harm.

## COUNT III
(Breach of the Covenant of Good Faith and Fair Dealing)

27. TouchPoint incorporates by reference paragraphs one through twenty-six.

28. In every contract there is implied a covenant of good faith and fair dealing.

29. Kodak's conduct constitutes a breach of the covenant of good faith and fair dealing.

30. Kodak's conduct has caused and continues to cause TouchPoint substantial damages and irreparable harm.

## COUNT IV
(Misrepresentation)

31. TouchPoint incorporates by reference paragraphs one through thirty.

32. Kodak has made material misrepresentations to TouchPoint, as set forth above, intending that TouchPoint rely on those misrepresentations.

33. TouchPoint has relied on these misrepresentations to its detriment.

34. TouchPoint has suffered substantial damages as a result of Kodak's misrepresentations.

## COUNT V
### (Promissory Estoppel)

35. TouchPoint incorporates by reference paragraphs one through thirty-four.

36. Kodak represented to TouchPoint that it would be the exclusive software provider for Kodak's digital photo kiosks.

37. In reliance on this representation and the continued representations during the work on this joint venture, TouchPoint provided its confidential information to Kodak, assisted Kodak in the development of this business and agreed not to develop its own competing business in this area.

38. Kodak and TouchPoint agreed to all of the terms for their business enterprise.

39. Kodak has breached its agreement with TouchPoint by disclosing this confidential information and now refusing to proceed with the agreement.

40. Kodak's conduct has caused and continues to cause TouchPoint substantial damages and irreparable harm.

## COUNT VI
### (Injunctive Relief)

41. TouchPoint incorporates by reference paragraphs one through forty.

42. As a direct and proximate result of Kodak's use and disclosure of TouchPoint's confidential information, TouchPoint has suffered and will continue to suffer irreparable injury.

43. TouchPoint has no adequate remedy at law.

WHEREFORE, TouchPoint Solutions, Inc. prays that this Court:

1. Issue a preliminary and permanent injunction restraining Kodak and all those acting in concert with it from using or disclosing TouchPoint's confidential information;

2. Order that Kodak return all of TouchPoint's confidential information;

3. Order that Kodak provide a written accounting of all entities and persons to which Kodak has disclosed TouchPoint's confidential information and a description of that confidential information;

4. Enter an order for expedited discovery in connection with the preliminary injunction request;

5. Order that Kodak not enter into any business venture or product sales in the area of remote device management;

6. Award TouchPoint its damages caused by Kodak's conduct;

7. Award TouchPoint Kodak's profits;

8. Award TouchPoint its costs, expenses and attorneys' fees; and

9. Award such other and further relief that this Court deems just.

Respectfully submitted,

TOUCHPOINT SOLUTIONS, INC.
By its attorneys,

_____
H. Joseph Hameline, BBO #218710
Mintz Levin Cohn Ferris Glovsky
and Popeo, P.C.
One Financial Center
Boston, MA 02111
617/542-6000

Dated: May 19, 2004

LIT 1456974v1