IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOUCHPOINT SOLUTIONS, INC., <br> Plaintiff, <br><br> v. <br><br> EASTMAN KODAK COMPANY, <br> Defendant | Civil Action No. 04-11014-NMG |

**PLAINTIFF TOUCHPOINT SOLUTIONS, INC.'S OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER VENUE**

Plaintiff TouchPoint Solutions, Inc. ("TouchPoint") filed this lawsuit to remedy, among other complaints, Defendant Eastman Kodak Company's ("Kodak") misappropriation of TouchPoint's confidential, trade secret information. TouchPoint chose Massachusetts as a forum for this lawsuit because the events leading up to this action occurred throughout the United States and Canada. The parties' representatives in this case have traveled to and from Las Vegas, Nevada, Raleigh-Durham, North Carolina, Boston, Massachusetts, Toronto, Canada, Rochester, New York and Atlanta, Georgia. In addition, TouchPoint's server on which much of the confidential information at issue was stored was set up by TouchPoint in Washington, D.C. Given the widely dispersed witnesses and documents in this case, TouchPoint's choice of forum is entirely appropriate. Kodak simply cannot meet its heavy burden of showing that the Western District of New York ("WDNY") is significantly more appropriate. This is particularly true in light of the great deference that the Court must accord TouchPoint's choice of forum.

**A.    Relevant Factual Background**

Kodak, a multinational, multibillion dollar corporation with offices throughout the United States (including Massachusetts), claims in its Motion to Transfer Venue that the "operative facts have a strong connection to New York" and that "no prospective witnesses reside[] in

Massachusetts." Kodak's Motion to Transfer Venue at p. 1. Yet, Kodak itself identifies in its own Motion papers two individuals who played crucial roles in TouchPoint's negotiations with Kodak that gave rise to this case: John C. Raby and Edward McGowan. See Affidavit of Thomas Pinkham, ¶ 11. As Kodak concedes, both Messrs. McGowan and Raby were "[i]nvolved in negotiations of possible license agreement between Kodak and TouchPoint." Both Mr. Raby and Mr. McGowan work and/or reside in Massachusetts. See Affidavit of Anila Jobanputra ("Jobanputra Aff."), ¶¶ 2, 4; Affidavit of John C. Raby ("Raby Aff."), ¶¶ 3-6. Moreover, TouchPoint's Board of Directors and executive management meetings typically occur in Boston, Massachusetts. See Jobanputra Aff., ¶ 5.

While Kodak attempts to portray the events culminating in this litigation as based almost entirely in Rochester, New York, where Kodak's headquarters and its counsel happen to be located, the facts tell a different story. This story began in early-March 2003 -- far from Rochester, New York, in Las Vegas, Nevada, where both Kodak and TouchPoint representatives were attending a Photo Management Application trade show. See Jobanputra Aff., ¶ 7; Raby Aff., ¶ 7. In Las Vegas, the parties discussed the use of TouchPoint's network management software, Catapult, in Kodak's digital photo kiosk product called Picture Maker. Id.

From Las Vegas, TouchPoint representatives in both Toronto and Massachusetts proceeded to have telephone conversations with Kodak representatives in Rochester, New York about Kodak's worldwide use of Catapult in its 40,000 digital photo kiosks. See Jobanputra Aff., ¶ 7; Raby Aff., ¶¶ 7-9. As a result of these continued discussions, TouchPoint agreed to conduct a pilot test with its Catapult software with Kodak customers in Atlanta, Georgia. See Jobanputra Aff., ¶ 9; Raby Aff., ¶ 8. Kodak specifically requested that the pilot be conducted in Atlanta because its photo kiosk deployment team and its clients were based there. Id. Thus,

virtually every member of Kodak's photo kiosk deployment team involved in the Catapult project with TouchPoint is located *not in Rochester*, but in Atlanta, Georgia. See Jobanputra Aff., ¶¶ 9-10. Moreover, numerous Kodak employees from Kodak's service center in Raleigh-Durham, North Carolina were involved in the pilot program. Id. In addition to these activities in Atlanta and Raleigh-Durham, TouchPoint also established a server for this project in Washington, D.C., which stored much of the confidential information at issue. See Jobanputra Aff., ¶ 9.

After the successful conclusion of the pilot program in November 2003, representatives from TouchPoint in both Toronto and Massachusetts continued negotiations with Kodak. See Jobanputra Aff., ¶ 11; Raby Aff., ¶ 9. Without warning, in April 2004, Kodak's representatives cut off all discussions with TouchPoint in April of 2004. See Raby Aff., ¶ 9.

## ARGUMENT

### A.   Kodak Cannot Meet Its Burden Of Proving That Transfer Is Warranted Under 28 U.S.C. § 1404(a).

TouchPoint selected Massachusetts as the appropriate forum for this action based on its own strong contacts with this state, Kodak's own strong contacts with the state, and because Massachusetts is a convenient forum with respect to the events that took place throughout the United States and Canada that led to this lawsuit. This Court should reject Kodak's request to transfer this action because Kodak cannot sustain its burden of demonstrating that TouchPoint's choice of forum is improper. Because Kodak's Motion to Transfer Venue merely provides aspirations, not legally cognizable grounds, to support its wish to substitute its choice of forum for that chosen by TouchPoint.

1.  **Appropriate Legal Standards**

There is a strong presumption in favor of the plaintiff's choice of forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 508, 510 (1947) ("Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); Northern Light Tech., Inc. v. Northern Lights Club, 97 F.Supp.2d 96, 108 (D. Mass. 2000) (Woodlock, J.) (concluding that Massachusetts was appropriate forum even though defendants were in Alberta, Canada). Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F.Supp.2d. 134, 142 (D. Mass. 1999) (Ponsor, J.) (holding that "other considerations being equal, the tie-breaking factor is the 'great weight' that this court must give to the plaintiff's choice of forum"); Shipley Co. v. Clark, 728 F.Supp. 818, 823 (D. Mass. 1990) (*quoting* Home Owners Funding Corp. of America v. Century Bank, 695 F.Supp. 1343, 1347 (D. Mass. 1988)) (stating that the "overriding principle in any transfer analysis ... is that 'the plaintiff's choice of forum is entitled to great weight'" and the defendant must shoulder a heavy burden to obtain a change of venue). This presumption may be overcome only when the private and public interest factors strongly favor an alternative forum. See, e.g., Brookfield Mach., Inc. v. Calbrit Design, 929 F.Supp. 491, 501 (D. Mass. 1996) (Gorton, J.). The heavy burden of demonstrating that transfer is appropriate "rests with the party seeking transfer[.]" Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).

In determining whether to subvert the plaintiff's choice of forum and allow a defendant to transfer venue under 28 U.S.C. § 1404(a), the Court must consider, among other factors, the convenience of the forum to the parties and the witnesses, as well as the interest of justice. See Codex v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977); Veryfine Prod. Inc. v. Phlo Corp., 124 F.Supp.2d at 24 (D. Mass. 2000) (Young, C.J.); Brookfield Mach., Inc., 929 F.Supp.

4

at 501 (Gorton, J.) (holding that the testimony of six key employees located in California did not necessitate a change of venue).

Kodak cannot meet its heavy burden by merely showing that the claim arose elsewhere or that another forum might have been the choice of the defendant or the Court. See Berrigan v. Greyhound Lines, Inc., 560 F.Supp. 165, 169 (D. Mass. 1982). Rather, the defendant must show "that the factors in favor of transfer predominate." Norman v. Brown, Todd & Heyburn, 693 F.Supp. 1259, 1261 (D. Mass. 1988) (emphasis added). To succeed on its Motion, therefore, Kodak must demonstrate not only that the alternative forum is more convenient to *both* parties, but also that a transfer of forum would serve the interests of justice. Stripping away the hyperbole in Kodak's brief, it is clear that the only possible reason to transfer this case to the Western District of New York would be to make this litigation easier and more cost-efficient for Kodak, while simultaneously making TouchPoint's road to relief more burdensome.

### 1. Massachusetts Is Equally Convenient For Both Parties

Kodak claims that the Western District of New York is a more convenient forum for both parties, given Kodak's headquarters in Rochester, New York and the geographic proximity of TouchPoint's operational headquarters in Toronto. This argument ignores the fact that many of the actors and documents in this dispute are based in Massachusetts, Georgia, North Carolina, Washington, D.C. and elsewhere. Kodak's "inconvenience" argument is no more than a thinly veiled attempt by Kodak to force TouchPoint to litigate its case in Kodak's backyard. Unfortunately for Kodak, as a substantive matter, a shift in the inconveniences of litigation from one party to another does not justify granting a motion to transfer venue. See Trans Nat'l Travel, Inc. v. Sun Pacific Int'l, Inc., 10 F.Supp.2d 79, 81 (D. Mass. 1998) (Harrington, J.); Shipley Co., 728 F.Supp. at 824.

5

Indeed, federal courts in the First Circuit recognize that "a plaintiff should not be deprived of the advantages of its own choice of jurisdiction except upon a <u>clear</u> <u>showing</u> of facts which either "(1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiffs['] convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative or legal problems." <u>Veryfine Prod., Inc.</u>, 124 F.Supp.2d at 20 (*citing* <u>Nowak v. Tak How Inv., Ltd.</u>, 94 F.3d 708, 719 (1st Cir. 1987). In <u>Northern Light Technology</u>, for example, Judge Woodlock held that, while the Canadian defendant would bear some inconvenience in litigating in Massachusetts, including the expense of having witnesses travel from Alberta, Canada to Boston, this hardship was insufficient to overcome the heavy presumption favoring the plaintiff's forum selection. <u>See</u> <u>Northern Light Tech.</u>, 97 F.Supp.2d at 108. The Court further explained with respect to such matters, "[t]he significant cost of traveling here for the litigation is burdensome, but litigation, sadly, is an expensive proposition....[t]here is nothing inordinate in the overall cost of this litigation in this forum." <u>Id.</u>

Kodak has made no showing of "oppressiv[e] or vexati[ous]" inconvenience beyond the general hardship that accompanies all litigation. Moreover, as Judge Young stated in the <u>Veryfine</u> decision, "the difference between Boston and New York is minimal...[and] it is not a hardship to travel from New York to Boston in order to appear for a civil trial[.]" <u>Veryfine Prod., Inc.</u>, 124 F.Supp.2d at 25-26. This is especially true in this case, where the parties have commonly traveled far greater distances to Georgia, Nevada, Washington, D.C. and North Carolina during the course of events leading to this action. <u>See</u> Jobanputra Aff., ¶¶ 9-10.

In fact, mutual convenience makes Massachusetts the ideal forum for this action. Not only are both parties represented by attorneys with law offices in Boston (though TouchPoint's

6

counsel does *not* have an office in Rochester, as does Kodak's counsel), Kodak has regional corporate offices in Massachusetts and Boston is easier for travel from other locations throughout the country than is Rochester. Massachusetts is also a more geographically central location (and) given the events that occurred in Georgia, Massachusetts, New York, North Carolina, Washington, D.C. and Toronto. See Jobanputra Aff., ¶¶ 2, 7, 9-10.

Kodak next argues that the case should be transferred because many of the documents at issue may be held at Kodak's corporate headquarters in Rochester, New York. See Kodak's Motion to Transfer Venue at p. 7. However, it is equally, if not more likely, that the bulk of relevant documents are located in Atlanta, Georgia, where Kodak's product development team for their digital photo kiosk business is based and where TouchPoint conducted the pilot program of the Catapult software that is at the center of this dispute. See Jobanputra Aff., ¶ 9.

Regardless of Kodak's vague assertions as to the physical location of any documents relevant to the case, courts have held that "access to documents and other proof is not a persuasive factor in favor of transfer without proof that documents are particularly bulky or difficult to transport." Sunshine Cellular v. Vanguard Cellular Sys., Inc., 810 F.Supp. 486, 500 (S.D.N.Y. 1992) (emphasis added); see also Norman, 693 F.Supp. at 1261-62 (defendants' argument that the bulk of documents were located and already organized and marked for inspection in transferee district was insufficient to warrant transfer); S-G Sec., Inc. v. Fuqua Inv. Co., 466 F. Supp. 1114, 1132 (D. Mass. 1978) (defendants failed to demonstrate that it would be unduly burdensome to photocopy and transport relevant books and records to forum state). Kodak has offered this Court none of the specific proof that is required when a party claims that the location of documents is relevant to a transfer decision. Furthermore, in this dispute between two very technologically capable parties, most of the documents at issue on both sides are

7

available electronically and can very easily be transmitted at the click of a button, making the location of documentation a non-issue. See Princess House, Inc., 136 F.R.D. at 21 (holding that the mobility of the documents at issue made the factor insignificant in regards to venue analysis)

Finally, Kodak argues that the choice of law provision contained in the parties' Confidential Disclosure Agreement justifies transferal to the WDNY. See Kodak's Motion to Transfer Venue at p. 8. Judge Young squarely rejected this argument in Trans National Travel, where he held that the "legal issues involved in the breach of contract claim are straightforward and [the District of Massachusetts] has experience in applying the law of other states." Trans Nat'l Travel, 10 F.Supp.2d at 81; see also Veryfine Prod., Inc., 124 F.Supp.2d at 25.

### 2. As Witnesses Are Dispersed Throughout The United States And Canada, Massachusetts Is An Equally Convenient Forum.

Kodak wholly ignores that two of the TouchPoint individuals identified in its own Motion papers as crucial to the facts giving rise to this case are located in Massachusetts. See Affidavit of Thomas Pinkham, ¶ 10. John C. Raby and Edward McGowan both live and/or work within this Commonwealth. Instead, Kodak claims that more potential witnesses are located in Rochester (i.e., Kodak employees) or are geographically close to Rochester (i.e., TouchPoint employees in Toronto). Potential witnesses, however, are dispersed throughout the United States and Canada.

To be successful, Kodak must lay out a <u>detailed description</u> of the witnesses burdened by the chosen forum, the reason the chosen forum poses a hardship to each witness, and the nature and quality of the testimony each witness would be able to provide. See, e.g., Trans Nat'l Travel, 10 F.Supp.2d at 81-82. Kodak makes these submissions only half-heartedly, merely stating that:

8

- "[A]ll of the Kodak employees who were involved with TouchPoint reside in Rochester...[and] the WDNY is far more convenient for those witnesses than the district of Massachusetts." See Kodak's Motion to Transfer Venue at p. 7 citing Pinkham Aff. ¶ 7.

- "The key Kodak decision maker, Kent McNeeley, is no longer a Kodak employee, but still resides within the WDNY...[h]is live testimony could not be compelled by this Court, but could be compelled within the WDNY." See id.

- And because Toronto is closer to Rochester, New York than to Boston Massachusetts. See id.

Such bare assertions, however, are insufficient to warrant transfer of venue. See Northern Light Tech., 97 F.Supp.2d at 108 (holding that the court's inability to compel the testimony of witnesses based in Canada was "insufficient to overcome the presumption favoring the [p]laintiff's forum selection"); Shipley Co., 728 F.Supp. at 823-24 (holding that the defendant's statement that "all of the essential evidence and witnesses are located in or near Michigan" was not enough to necessitate a transfer of venue because it did not "clearly specify the key witnesses to be called and [did not] make a general statement of what their testimony [would] cover").

### 3. The Interests of Justice Favor Massachusetts

The interest of justice in this case, furthermore, weighs decidedly in favor of *denying* Kodak's motion to transfer. As it is used in 28 U.S.C. § 1404(a), the phrase "in the interest of justice" has generally been interpreted to include several elements: (1) the desire to avoid multiple litigation from a single transaction; (2) the relative docket conditions in the chosen forum and the proposed transferee district; (3) the advantage to be gained by having state law applied by federal judges who are familiar with it; and (4) the possibility of local prejudice against one of the parties in the chosen forum and the possible need for a jury view. See generally C. Wright, A. Miller, 15 Federal Practice and Procedure § 3854 and cases cited therein.

Under this view, almost all of these factors are non-issues in this case: as of now only one piece of litigation has arisen from TouchPoint's claims and that is the matter before this Court. Both the District of Massachusetts and the Western District of New York are efficiently run dockets without such an extreme backlog that it would cause injustice in this case. See Veryfine Prod., Inc., 124 F.Supp.2d at 25 (holding "the difference between Boston and New York is minimal and the District of Massachusetts has a low average caseload and ample judicial resources to handle this case expeditiously"). And, as Judge Young stated in Trans National and Veryfine (discussed above), the District of Massachusetts is entirely competent to determine any possible legal issues arising under either New York or Massachusetts law.

The last factor – the possibility of local prejudice against a party – swings strongly in *favor* of keeping the litigation in Massachusetts. On this point, Kodak's argument is most notable for what it does *not* say about the choice of forum to which it requests this case be transferred. Conspicuously absent from any of Kodak's filings is the fact that the Western District of New York, where Kodak asserts the case should be heard, is in the heart of "Kodak Country." Not only was Kodak founded and headquartered in Rochester, New York, but it has historically been and still remains the largest employer in the region.[1] TouchPoint fully assumes that this case will go to trial and that a jury pool will eventually be sought. As this memorandum has made clear, TouchPoint selected Massachusetts as the forum in which TouchPoint would file this lawsuit for many reasons, one among them because it provides an even playing field for both parties to state their case.

---

[1] See James Bandler, *Kodak to Cut Staff Up to 21%, Amid Digital Push*, WALL ST. J., Jan. 22, 2004, at A1 ("Kodak remains the largest employer in the Rochester area, with about 21,000 workers").

10

## CONCLUSION

Based on the foregoing, TouchPoint respectfully requests that this Court deny Defendant Kodak's Motion to Transfer Venue.

## REQUEST FOR ORAL ARGUMENT

TouchPoint respectfully requests oral argument on this motion.

Respectfully submitted,

TOUCHPOINT SOLUTIONS, INC.,

By its attorneys,

_____
H. Joseph Hameline, BBO #218710
Geri L. Haight, BBO #638185
Mintz, Levin, Cohn, Ferris,
   Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
617-542-6000

Dated: August 18, 2004

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail/hand on [illegible] on 8/18/04