IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

TOUCHPOINT SOLUTIONS, INC.,
    Plaintiff,

v.

EASTMAN KODAK COMPANY,
    Defendant

Civil Action No. 04-11014-NMG

### AFFIDAVIT OF JOHN C. RABY

I, John C. ("JC") Raby, being duly sworn, hereby depose and state the following:

1.    I have been involved with Plaintiff TouchPoint Solutions, Inc. ("TouchPoint") since its inception. TouchPoint is a closely held corporation headquartered in 12480 West Atlantic Blvd., Suite 2, Coral Springs, Florida 33071. TouchPoint also maintains an operational facility in Toronto, Canada and sales offices in California and the United Kingdom.

2.    Within a matter of months of TouchPoint's inception, my initial consulting role for TouchPoint transitioned to my becoming a shareholder, director and one of the active members of executive management at TouchPoint. I have been routinely involved with TouchPoint in virtually all significant company matters, from strategic direction to product positioning, and have consistently sought to foster the effective growth and value of the company in its technology.

3.    When I first began my executive relationship with TouchPoint in 2001, I was a partner at Boston Atlantic Partners LLP located at 10 Provence Court, Boston, MA 02111. I conducted all business on TouchPoint's behalf from this location (with the exception of travel outside of Massachusetts for meetings, customer visits, etc. when required). In early 2004, I co-founded Boston Meridian, LLC ("Boston Meridian"), which is located at 354 Turnpike Street,

Suite 102, Canton, MA 02021. During a very brief period while I established my office in Canton, I did work from a small office in Newport, Rhode Island.

4.  All of our corporate board meetings and business direction meetings are held in Massachusetts, either by telephone or in person. Massachusetts is most convenient for the board members (Brent Dixon, another board member, is located in Atlanta, Georgia, and travels to Boston frequently). The remainder of the board members are in Toronto.

5.  In my capacity as an active director and shareholder of TouchPoint, I have been personally involved in TouchPoint's operations, which involves almost daily interaction via email or telephone discussions with TouchPoint personnel and third parties. I have the responsibility of visiting our offices in the United Kingdom, Canada and Florida on a periodic basis. I typically participate in major business discussions with all of TouchPoint's customers or potential customers in Europe, Canada, the United States and Australia. For example, I have negotiated long-term contracts that establish the terms and conditions for TouchPoint's obligations and deliverables. This process has required negotiation of key business terms and conditions, as well as pricing discussions with customers and legal counsel. I was similarly involved in the negotiations between TouchPoint and Kodak on the terms of the relationship, which lead to this dispute.

6.  I have been intimately involved in TouchPoint's relationship with Defendant Eastman Kodak Company ("Kodak") since March of 2003. I participated in most major meetings and discussions between TouchPoint and Kodak relating to Kodak's worldwide use of TouchPoint's remote management software, Catapult, in its digital photo kiosks.

7.  In early March 2003, TouchPoint representatives advised me that TouchPoint had engaged in discussions with Kodak's worldwide group at the Photo Management

2

Application trade show in Las Vegas, Nevada to offer Catapult for Kodak Picture Maker product, its digital photo kiosk. Initially, I assisted TouchPoint in structuring and providing advice relating to TouchPoint's potential relationship with Kodak. My initial contact and introduction to Kodak occurred in June 2003 via telephone from my office in Massachusetts. From that time forward, I actively participated in weekly telephone updates with our Toronto office on the progress and success of our demonstrations and testing. I also participated in telephone discussions from my Massachusetts office with Kodak relating to the relationship.

8. In August of 2003, I was involved in the decision to go forward with and to conduct a live pilot for Kodak at Kodak's customer facilities in Atlanta, Georgia and I continued thereafter to monitor that pilot. In November 2003, after the successful completion of the pilot, I worked with Anila Jobanputra, TouchPoint's President, to approach Kodak about the next steps in developing the Kodak-TouchPoint relationship. Kodak scheduled a visit to our Toronto offices for December 15, 2003. This visit was subsequently changed to a conference call. I participated in this discussion and subsequent negotiations. This discussion involved several members of Kodak management, namely Scott Auer, Tom Pinkham and John Metzger. These discussions concerned the terms, in letter of intent fashion, which were later documented in a Master Software License Agreement and Professional Services Agreement.

9.  During January 2004 to April 2004, I participated in numerous contract and related discussions, via telephone from my Massachusetts office between TouchPoint, Kodak management and legal counsel.

10. In April 2004, I was informed that Kodak had abruptly cancelled a daily scheduled telephone conference. Anila Jobanputra, Shamira Jaffer (of TouchPoint) and I requested that Kodak immediately re-schedule this conference call. However, Kodak informed us that they were terminating the relationship with TouchPoint.

11. From April to August 2004, I have participated in virtually all Kodak-related discussions from my office in Massachusetts, or at times in Toronto and at one meeting in Rochester.

Signed under the pains and penalties of perjury this _____ day of August, 2004.

_____
JC Raby

LIT 1474702v1